497 So.2d 790 (1986)
HUEY T. LITTLETON CLAIMS SERVICE, INC. and Huey T. Littleton, Plaintiffs-Appellees,
v.
John McGUFFEE, Defendant-Appellant.
No. 85-1190.
Court of Appeal of Louisiana, Third Circuit.
November 5, 1986.
*791 L.H. Olivier, Lafayette, for defendant-appellant.
Woodley, Barnett, Williams, Fenet, Palmer & Pitre, Robert W. Fenet, Lake Charles, for plaintiffs-appellees.
Before GUIDRY, DOUCET and KING, JJ.
GUIDRY, Judge.
Plaintiffs, Huey T. Littleton Claims Service, Inc. and Huey T. Littleton, individually (hereafter Littleton), filed the instant suit against defendant, John McGuffee, an ex-employee of Littleton, seeking injunctive relief and damages under La.R.S. 51:1401 et seq., the Louisiana Unfair Trade Practices and Consumer Protection Law. Only the injunction portion of the suit is at issue here.
Following a hearing, the trial court, on July 12, 1985, issued a minute entry detailing its reasons for judgment, and subsequently on July 16, 1985, judgment in favor of plaintiffs and against defendant, granting a permanent injunction was signed. That judgment reads in pertinent part:
"IT IS ORDERED, ADJUDGED AND DECREED that respondent's actions in taking LITTLETON'S confidential client lists is in direct violation of the Louisiana Unfair Trade Practices Act, LSA-R.S. 51:1401, et seq.
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that McGUFEE is permanently enjoined from making any use whatsoever of any client lists or any trade secrets of HUEY T. LITTLETON CLAIMS SERVICE, INC. or HUEY T. LITTLETON, INDIVIDUALLY."
*792 In his reasons for judgment, the learned trial judge explained his order thusly:
"The Respondent was employed as manager of the Lafayette branch office of Huey T. Littleton Claims Service, Inc. While employed by Relator he successfully solicited clients of his employer. The Court deems this a breach of his feduciary [sic] duty owed to his employer as well as a violation of the Unfair Trade Practices Act, LSA-R.S. 51:1401 et seq; NCH Corporation vs. Lynn N. Broyles, 749 F.2d 247 (1985); Dufau vs. Creole Engineering, Inc., 465 So2d 752 (La.App. 5th Cir.1985).
Respondent's actions in taking Relator's confidential client lists was in direct violation of LSA-R.S. 51:1405. The Court hereby enjoins Respondent from making use of any of the aforementioned lists or any trade secrets of Relator.
Insofar as the customers McGuffee converted, the Court cannot enjoin Respondent from doing business with them. Much of the harm resulting from defendant's alleged misappropriation has already been suffered by plaintiff. Defendant has returned his customer list and will not have access to future lists. The Court cannot enjoin the defendant from servicing the customers he has alienated from the plaintiff. NCH Corp. vs. Broyles, supra."
Defendant, McGuffee, appealed the July 16, 1985 judgment. Although appellant lists six assignments of error, we can dispose of all six by considering the three following issues:
1. Did defendant breach a fiduciary duty to Littleton?
2. If so, did appellant's actions constitute a violation of R.S. 51:1401 et seq?
3. Did the district court err in granting the permanent injunction?
The following facts are undisputed. Plaintiffs have been engaged in the business of insurance adjusting and appraisal service, representing insurance companies and self-insureds, for a period of twenty years. For at least two years prior to June 12, 1985, the day he resigned, John McGuffee managed plaintiffs' Lafayette office. During the last week of May 1985, McGuffee traveled to New Orleans to see a Mr. Bruce Walker, the manager of the Marine Claims Department of I.N.A., on Littleton business. While at a business lunch with Mr. Walker, McGuffee inquired, "Bruce, if I should go into business for myself how would that affect our relationship?" According to McGuffee, Walker answered: "None, I'll continue to assign files to you, we would like for you to continue working the files ...".
Defendant-appellant also admitted that on June 11, 1985, he traveled to Houston, Texas, again on Littleton business, to see, among others, Mr. George Hargrove. McGuffee, when questioned about his meeting with Mr. Hargrove, stated:
"... The purpose of me meeting with Mr. Hargrove was, and I think the way I phrased the question to him was `George, I'm considering going into business for myself. How would that affect our relationship, working relationship?' He responded that, `It won't have any affect on it, we like your work, if you want to go into business for yourself we'll be glad to continue to send you work as we have in the past,' and then I asked, `Well, what about existing files.' He said, `Well, I would prefer that you would continue to work on those existing files to provide continuity, we're in the process of settling some, they're in maintenance, blah, blah, blah,' and that's what took place...."
The following morning, June 12, 1985, McGuffee resigned from the employ of plaintiffs, copied and removed approximately sixty files and forty-five "Rolodex" cards from plaintiffs' office over the objection of Mr. Littleton and started his own business. In a heated discussion over the removal of these copies, McGuffee informed Littleton that he had been in contact with various clients of plaintiffs and had received the clients' permission to make copies of their files and take them with him to his new business.
The Louisiana Unfair Trade Practices and Consumer Protection Law is relatively *793 new, having been enacted by the legislature in 1972. Since its inception, the courts have been called upon many times to interpret its provisions. In Roustabouts, Inc. v. Hamer, 447 So.2d 543 (La.App. 1st Cir. 1984), the court stated:
"The Louisiana Unfair Trade Practices and Consumer Protection Law declares unlawful unfair methods of competition and unfair acts or practices in the conduct of any trade or commerce. LSA-R.S. 51:1405 A. Private actions are permitted by any person who suffers any ascertainable loss as a result of the use by another person of an unfair practice, and if the actions are successful, the trial judge shall award reasonable attorney's fees to the prevailing party. LSA-R.S. 51:1409 A. Of importance is the fact that the term person is defined in LSA-R.S. 51:1402(8) to include corporations as well as natural persons.
... [A]s we stated in Guste v. Demars, 330 So.2d 123, 125 (La.App. 1st Cir.1976):
The substantive prohibition of the Unfair Trade Practices and Consumer Protection Law is broad and does not specify particular violations. La.R.S. 51:1405(A) declares that:
"Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are declared unlawful."
The language of this section tracks closely that of the Federal statute, 15 U.S.C. Section 45(a). Because of the variety of possible unfair and deceptive practices, the Federal statute was intentionally broadly written, leaving the determination of individual violations to the Commission and the courts. Our legislature has expressed a similar intention in patterning our law so closely on the Federal statute.
. . . . .
It should be noted that the private right of action in the Louisiana law is not provided for in the Federal scheme. But more importantly, consistent with the definition of person cited above, it has been held that the language of LSA-R.S. 51:1409 A confers the private right of action on both consumers and business competitors. Morris v. Rental Tools, Inc., 435 So.2d 528 (La.App. 5th Cir. 1983). Furthermore, it has been stated that a practice is unfair when it offends established public policy and when the practice is unethical, oppressive, unscrupulous, or substantially injurious to consumers and consumers include business competitors...."
Defining "unfair methods of competition and unfair or deceptive acts or practices" has in the past and continues to prove troublesome. A panel of this court in Lamb v. Quality Inspection Serv., Inc., 398 So2d 643 (La.App. 3rd Cir.1981), pronounced:
"What constitutes unfair competition is a matter to be decided in each individual case and involves a balancing between the right of the employee to individual freedom on the one hand and the right of the employer to honest and fair competition and to protection of business assets and property in the nature of trade secrets on the other hand. National Oil Service of Louisiana, Inc. v. Brown, 381 So.2d 1269 (La.App. 4 Cir.1980).
The courts, in addition, have always stood ready to grant injunctive relief to protect valuable `trade secrets' property. Marcann Outdoor, Inc. v. Johnston, 229 So.2d 419 (La.App. 3 Cir.1969).
Various efforts have been made to define what is a `trade secret'. The tests applied include: (1) is the information a secret not generally known to the trade; (2) although absolute secrecy is not essential, has it been kept at least a qualified secret; and (3) is it of value. Standard Brands, Inc. v. Zumpe, 264 F.Supp. 254 (E.D.La.1967)."
The law recognizes that, at some point, an employee may wish to leave his position and "try his hand" at competing with his former boss, free enterprise being the cornerstone of American democracy. While a former employee's right to compete must be protected, so must the right of the existing business to fair play be maintained.
In Engineered Mechanical Services v. Langlois, 464 So.2d 329 (La.App. 1st Cir. *794 1984), writ denied, 467 So2d 531 (La.1985), the court found that:
"...
even in the absence of a restrictive covenant not to disclose confidential information, trade secrets will be protected where a confidential relationship exists. Wheelabrator Corporation [v. Fogle] 317 F.Supp. [633] at 637; Standard Brands, Inc., 264 F.Supp. at 262; Comment, Agreements Not to Compete, 33 La.L.Rev. 94 (1972); See also, Holliday, Jr. and Norman, Employment Contracts: A Checklist for the Draftsman, 31 La.B.J. 12 (1983). This rule is based on the principle that unfair methods of competition are against public policy and the agency principle that an employee (agent) has a duty not to use or communicate information given to him in confidence in competition with or to the injury of the employer (principal) unless the information is a matter of general knowledge. Standard Brands, Inc., 264 F.Supp. at 262; National Oil Services of Louisiana, Inc., 381 So.2d at 1273. Such a wrongful disclosure or use of a trade secret is considered a breach of trust or confidence."
(Emphasis ours).
National Oil Service of Louisiana, Inc. v. Brown, 381 So.2d 1269 (La.App. 4th Cir. 1980), tells us that:
"A former employee who enters business in competition with his former employer necessarily utilizes the experience he acquired and the skills he developed while in his former employment. While the employer may by contract obtain limited protection against competition from former employees, by law he may be entitled to protection against wrongful appropriation and use by former employees of things specially developed by the employer in his business, such as lists of customers (particularly in route sales) whose regular patronage has been acquired by the employer's advertising, solicitation and organized effort. Considerations as to the type of protection to be afforded to the employer in a specific case include the manner in which and the purpose for which customer lists are compiled; the conduct and motivation of the employee before and after termination of the employment; the manner in which the customers are contacted after the termination and the nature of the representations made to the customer by the former employee; and the existence of a scheme to take over all or a substantial part of the former employer's business, or of an intent to injure the former employer's business."
(Emphasis ours).
Finally, the court in Dufau v. Creole Engineering, Inc., 465 So.2d 752 (La.App. 5th Cir.1985), writ denied, 468 So.2d 1207 (La.1985), stated:
"The solicitation and diversion of an employer's customers prior to termination constitutes unfair competition entitling the plaintiff to recover damages. As stated by the trial court, `an employee owes his employer a duty to be loyal and faithful to the employer's interest in business'."
From the facts in this case, it is crystal clear that defendant, John McGuffee, violated La.R.S. 51:1401, et seq. by soliciting his employer's customers prior to resigning. We further agree with the trial court's conclusion that his actions in soliciting Littleton customers and copying Littleton customer lists, the Rolodex cards, which Littleton testified were confidential and the result of many years of solicitation and effort, constituted a breach of McGuffee's fiduciary duty to his employer.
We find no error in the trial court's action of permanently enjoining appellant from making use of the information he obtained from his former employer by unethical and unscrupulous means.
Accordingly, for the reasons stated, the judgment appealed from is affirmed. All costs of this appeal are to be borne by appellant.
AFFIRMED.