**Gary J. PORTH, Appellee,**

v.

**IOWA DEPARTMENT OF JOB SERVICE, Appellant,**

**and**

**Auto Jet Muffler Corporation, Respondent.**

**No. 84–1517.**

Supreme Court of Iowa.

July 31, 1985.

Walter F. Maley, Blair H. Dewey, Joseph L. Bervid and Deborah A. Dubik, Des Moines, for appellant.

John J. Gajdel of Fultz & Gajdel, P.C., Des Moines, for appellee.

Considered by UHLENHOPP, P.J., and HARRIS, McCORMICK, McGIVERIN, and WOLLE, JJ.

McGIVERIN, Justice.

Respondent Iowa Department of Job Service appeals from the district court's order on judicial review reversing the agency's decision that petitioner Gary J. Porth was ineligible for unemployment benefits. We vacate the decision of the district court and remand to the agency for additional consideration of whether Porth is entitled to benefits.

On appeal, Job Service contends that the record made before the agency contains substantial evidence that Porth was discharged by his employer for "misconduct" within the meaning of Iowa Code section 96.5(2)(a) (1983).[1] Accordingly, Job Service maintains that the district court on judicial review should have upheld the agency's administrative determination that Porth was ineligible for unemployment benefits.

The record discloses the following facts. For approximately nine years before his discharge on April 1, 1983, petitioner worked full-time as an exhaust pipe bender for Auto-Jet Muffler Corporation, a small business engaged in the installation of exhaust systems on school buses. On January 18, 1983, the current owner of the company, Terry Aiken, purchased the business from its then owner, Jack Riley. Aiken had no previous experience in the exhaust system business.

On April 1, 1983, petitioner was discharged by Aiken from his employment. A Department of Job Service claims deputy disallowed Porth's claim for unemployment benefits. Petitioner timely appealed this decision, and an evidentiary hearing was held before a department hearing officer in a contested case proceeding. Iowa Code §§ 17A.2(2) and 17A.12.

At the hearing, Aiken testified that he discharged Porth for misconduct. He stated that petitioner had told Auto-Jet's other employees that he (petitioner) was planning

1. Iowa Code section 96.5(2)(a), dealing with eligibility for unemployment benefits, reads:

2. *Discharge for misconduct.* If the department finds that the individual has been discharged for misconduct in connection with the individual's employment:

a. The individual shall be disqualified for benefits until the individual has worked in and has been paid wages for insured work equal to ten times the individual's weekly benefit amount, provided the individual is otherwise eligible.

to start his own exhaust installation business in competition with Auto-Jet. Aiken further testified that Porth, while still employed at Auto-Jet, was asking his fellow employees to quit Auto-Jet and come to work for him in his new business, and that this was the main reason for his discharge by Aiken. The record showed a written statement by an employee to the effect that Porth, prior to his discharge, had asked him to come to work for Porth's new business. In response to questioning by petitioner's attorney, Aiken admitted that petitioner was very good at his job and had performed his duties satisfactorily before his discharge.

Porth testified in his own behalf at the hearing. He stated that, prior to the date of his discharge, he had contemplated quitting and starting a business in competition with Auto-Jet, and had gone to a bank to discuss generally the possibility of financing the undertaking. However, he testified that prior to his discharge he did not make any formal application for a loan nor take any other specific steps toward starting a new business. In his appellate brief, Porth admits he solicited his fellow Auto-Jet employees to go to work for his new business.

The hearing officer found that misconduct on Porth's part had not been established, and reversed the decision of the claims deputy. On appeal from the hearing officer's decision, the department appeal board reversed, ruling that misconduct on Porth's part had occurred and denying his eligibility for unemployment benefits.

Having exhausted administrative remedies, Porth sought judicial review in district court of the appeal board's decision. Iowa Code § 17A.19. Porth contended, inter alia, that the agency appeal board's decision was unsupported by substantial evidence. The district court reversed the appeal board's decision and declared Porth eligible for unemployment benefits. This appeal by Job Service followed. Iowa Code § 17A.20.

■ I. *The appeal board's findings of fact.* Our review of the appeal board's decision is at law. *Green v. Iowa Depart-*

*ment of Job Service,* 299 N.W.2d 651, 655 (Iowa 1980). The decision will be upheld if it is supported by substantial evidence in the record made before the hearing officer when that record is viewed as a whole. *Peoples Memorial Hospital v. Iowa Civil Rights Commission,* 322 N.W.2d 87, 91 (Iowa 1982). Iowa Code § 17A.19(8)(f). Evidence is substantial if a reasonable person would find it adequate for reaching a decision. *Peoples Memorial Hospital,* 322 N.W.2d at 91.

From the record in this case, the appeal board found as facts that Porth, prior to his discharge on April 1, had (1) contemplated starting a business in competition with his employer, (2) inquired about financing for this business, (3) solicited fellow employees at Auto-Jet to work for the new business, and (4) solicited Auto-Jet's customers for the new business.

On this appeal, Porth concedes that substantial evidence supports the first three findings of fact. With respect to the fourth, however, petitioner asserts that there is no substantial evidence to support a finding that, prior to his discharge, he solicited Auto-Jet's customers. Examination of the record convinces us that petitioner is correct in that respect.

■ Aiken, the owner of Auto-Jet, testified before the hearing officer that some of Auto-Jet's customers told him they had received a mailing from the Midland Exhaust Company, the business formed by petitioner shortly after his discharge from Auto-Jet. The mailing consisted of a price list for various exhaust system services, and a letter, dated April 1983, announcing the formation of the Midland Exhaust Company.

Porth acknowledged sending the mailing, but asserted that he did so only after his discharge from Auto-Jet. In response to questioning from petitioner's attorney, Aiken admitted that he did not know whether the mailing was sent before petitioner's discharge. The colloquy appears in the record as follows:

Q.: Do you have any evidence or any knowledge of the fact that [the mailing] was sent out when [petitioner] was your employee? A.: No, I don't have that. I would hope it wasn't. Out of fairness, I would hope—

Q.: You don't really know when. A.: I know it was the—I know it was in April.

There is no dispute that Porth was discharged on April 1. There is no evidence in the record to indicate that petitioner's solicitation of customers for his new business took place before April. We agree with petitioner that the appeal board's finding that he solicited Auto-Jet's customers for his new business while still an employee of Auto-Jet is unsupported by substantial evidence.

Accordingly, we will disregard that finding as a basis for the agency's final decision that Porth's actions constituted misconduct, thereby disqualifying him from benefits.

II. *Petitioner's proven acts as constituting misconduct.* We are left with the appeal board's findings that petitioner, while still an employee of Auto-Jet, (1) contemplated starting a business in competition with his employer, (2) inquired about financing for the business, and (3) solicited fellow employees at Auto-Jet to work for the new business. We must now consider whether any of these acts can constitute "misconduct" within the meaning of Iowa Code section 96.5(2)(a) and 370 Iowa Admin.Code 4.32(96)(1)(a).[2]

■■■ The first two findings need not detain us long. It is clear that an employ-

ee does his employer no legally cognizable harm by merely preparing or making arrangements to enter into competition with his employer. *See, e.g., Maryland Metals, Inc. v. Metzner,* 282 Md. 31, 39, 382 A.2d 564, 569 (1978); *Las Luminarias of the New Mexico Council of the Blind v. Isengard,* 92 N.M. 297, 302, 587 P.2d 444, 449 (N.M.Ct.App.1978). Although, as the *Metzner* court noted, "the line separating mere preparation from active competition may be difficult to discern in some cases," we are satisfied that petitioner's acts of contemplating the organization of a competing business and inquiring about financing of such a venture cannot constitute misconduct for the purposes of Iowa Code section 96.5(2)(a) or 370 Iowa Admin.Code 4.32(96)(1)(a).

■■■ With respect to the third finding (that petitioner, while still an employee of Auto-Jet, solicited his co-workers to come to work for him in his new business), the result could be different. It is generally held that an employee who solicits fellow employees to leave their employer in favor of a competitor breaches the duty of loyalty owed by an employee to his or her employer. *See American Republic Insurance Co. v. Union Fidelity Life Insurance Co.,* 470 F.2d 820, 824 (9th Cir.1972) (applying Oregon law); *Bancroft-Whitney Co. v. Glen,* 64 Cal.2d 327, 49 Cal.Rptr. 825, 843, 411 P.2d 921, 939 (Cal.1966); *Fish v. Adams,* 401 So.2d 843, 845 (Fla.Dist.Ct.App. 1981); *ABC Trans National Transport, Inc. v. Aeronautics Forwarders, Inc.,* 62 Ill.App.3d 671, 683, 20 Ill.Dec. 160, 169, 379 N.E.2d 1228, 1237 (Ill.App.Ct.1978); *Mary-*

---

**2.** 370 Iowa Admin.Code 4.32(96)(1)(a), which defines "misconduct" for the purposes of Iowa Code section 96.5(2)(a), reads as follows:

*Misconduct* is defined as a deliberate act or omission by a worker which constitutes a material breach of the duties and obligations arising out of such worker's contract of employment. Misconduct as the term is used in the disqualification provision as being limited to conduct evincing such willful or wanton disregard of an employer's interest as is found in deliberate violation or disregard of standards of behavior which the employer has the right to expect of employees, or in careless-

ness or negligence of such degree of recurrence as to manifest equal culpability, wrongful intent or evil design, or to show an intentional and substantial disregard of the employer's interests or of the employee's duties and obligations to the employer. On the other hand mere inefficiency, unsatisfactory conduct, failure in good performance as the result of inability or incapacity, inadvertencies or ordinary negligence in isolated instances, or good faith errors in judgment or discretion are not to be deemed misconduct within the meaning of the statute.

*land Metals, Inc. v. Metzner*, 282 Md. at 38, 382 A.2d at 568; *Duane Jones Co. v. Burke*, 306 N.Y. 172, 188–89, 117 N.E.2d 237, 245 (1954); *Lowndes Products, Inc. v. Brower*, 191 S.E.2d 761, 768 (S.C.1972). *Cf. Electronic Associates, Inc. v. Automatic Equipment Development Corporation*, 185 Conn. 31, 440 A.2d 249, 251 (1981) (no violation of duty of loyalty when solicitation occurred after termination of solicitor's employment); *Marine Forwarding & Shipping Co. v. Barone*, 154 So.2d 528, 530 (La.Ct.App.1963) (same); *Electrolux Corporation v. Lawson*, 654 P.2d 340, 341 (Colo.Ct.App.1982) (no offer of employment made until employees had resigned from previous employment; held, that solicitation breached no duty to employer).

■ The definition of "misconduct" in 370 Iowa Admin.Code 4.32(96)(1)(a) includes conduct demonstrating "intentional and substantial disregard ... of the employee's duties and obligations to the employer." We believe that the common-law duty of loyalty could be among the "duties and obligations" encompassed by the rule.

III. *Remand.* Although an employee who solicits fellow employees to leave their employer in favor of a competing business could be deemed to have committed misconduct, it is unclear that this was in fact the basis for the appeal board's decision denying Porth's eligibility for unemployment benefits.

■ The appeal board recited its four findings of fact as to Porth's actions, see division I *supra,* and stated that those acts constituted misconduct. In the preceding divisions of this opinion we have noted that the appeal board's fourth finding of fact is unsupported by substantial evidence, while its first and second findings are legally insufficient to constitute misconduct. The extent to which the appeal board relied upon the first, second, and fourth findings to reach its decision is unknown. The appeal board may have believed that any one of its findings was sufficient in itself to constitute misconduct, or it may have been the combination of all its findings that led to its conclusion of misconduct. Because

we cannot discern the degree of the appeal board's reliance on unsupported and legally insufficient findings of fact in reaching its decision, we believe the case should be remanded for reconsideration by the appeal board of its decision. Iowa Code § 17A.19(8). *Cf. Communist Party of the United States v. Subversive Activities Control Board,* 367 U.S. 1, 67, 81 S.Ct. 1357, 1395, 6 L.Ed.2d 625, 671–72 (1961) (finding on judicial review that a particular administrative finding of fact was unsupported by evidence did not require remand where the agency clearly did not rely on that finding of fact as grounds for its final decision).

Specifically, the appeal board is instructed on remand to decide whether, apart from any other of his acts, Porth's solicitation of his fellow employees as possible employees for his new business constituted "misconduct" within the meaning of Iowa Code section 96.5(a)(2) and 370 Iowa Admin.Code 4.32(96)(1)(a). Based on its answer to this question, the appeals board will then render a decision as to Porth's eligibility for unemployment benefits.

The judgment of the district court and the decision of the appeal board are vacated. The case is remanded to the agency for further proceedings consistent with this opinion.

VACATED AND REMANDED.